NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARLON E. BRADSHAW, SR.,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF NEW JERSEY et al.,<br><br>Defendants. | Civil Action No. 18-14089 (RK) (JBD)<br><br>**MEMORANDUM ORDER** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Defendant Dr. Ashraf E. Haggag's ("Dr. Haggag" or "Defendant") Motion for Summary Judgment.[1] ("MSJ," ECF No. 151.) Through counsel, Plaintiff Marlon E. Bradshaw Sr. ("Mr. Bradshaw" or "Plaintiff"), a state prisoner incarcerated at New Jersey State Prison ("NJSP"), opposed the motion ("Opp.," ECF No. 159), and Dr. Haggag replied ("Reply," ECF No. 162).[2] The Court has carefully considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons below, Defendant's Motion for Summary Judgment is **GRANTED**.

---

[1] The four other defendants in this action, who are also healthcare professionals, have separately moved for summary judgment. (*See* ECF No. 155.) That motion will be addressed in a separate Opinion.

[2] The parties initially filed their briefing in the same docket entry, such that ECF No. 151 includes Defendant's summary judgment motion, (ECF No. 151-2), Plaintiff's response brief, (ECF No. 151-9), and associated exhibits, (ECF Nos. 151-12 to 151-18), and Defendant's reply brief, (ECF No. 151-19). Plaintiff subsequently refiled his response, (ECF No. 159), and Defendant refiled his reply, (ECF No. 162). The later filings appear identical to the original filings and indeed contain the same pagination.

## I. BACKGROUND[3]

### A. PROCEDURAL BACKGROUND

On September 24, 2018, Plaintiff, then proceeding *pro se*, brought suit under 42 U.S.C. § 1983 for alleged Eighth Amendment violations. (ECF No. 1.) Dr. Haggag was not named in Plaintiff's initial complaint. On May 26, 2020, *pro bono* counsel was appointed for Plaintiff. (ECF No. 54.) A scheduling order was entered, (ECF No. 61), and subsequently extended several times, (ECF Nos. 84, 104, 110, 114). On July 7, 2022, Plaintiff, through counsel, filed an Amended Complaint, adding Dr. Haggag as a defendant. ("AC," ECF No. 89; *see* ECF No. 88 (consent order granting Plaintiff's request to amend complaint).) On June 2, 2023, Dr. Haggag filed an answer to the AC as well as crossclaims for indemnification and contribution against the four other defendants. (ECF No. 120.)[4] Most recently, in June of 2025, Dr. Haggag moved for summary judgment. (MSJ.)[5]

### B. FACTUAL BACKGROUND

In support of his motion, and as required by this District's Local Civil Rules, *see* L. Civ. R. 56.1(a), Dr. Haggag filed a Statement of Undisputed Material Facts, ("SUMF," ECF No. 151-3). Plaintiff, in contravention of Local Civil Rule 56.1(a), failed to file a responsive statement. *See* L. Civ. R. 56.1 ("The opponent of summary judgment shall furnish, with its opposition papers, a

---

[3] This case has an extensive procedural history. It has been litigated for over seven years and involves five total defendants, four of whom have brought a separate summary judgment motion not at issue here, (ECF No. 155). The Court thus presents an abridged recitation of events and allegations, laying out only what is relevant to the instant motion.

[4] On May 15, 2023, this case was reassigned from Judge Shipp to the undersigned. (ECF No. 115.)

[5] Mr. Bradshaw filed an opposition brief also styled as a cross-motion to compel Dr. Haggag's deposition. (Opp.) The Honorable J. Brendan Day, U.S.M.J., denied that motion, (ECF No. 163), reasoning that "[i]n the two-plus years since fact discovery closed, Bradshaw filed no request or motion seeking to compel Dr. Haggag's deposition; indeed, only after Dr. Haggag had filed his summary judgment motion was this midstream request raised to the Court," (*id.* at 2).

responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute . . . ."). Plaintiff instead expressly "relies on and incorporates" Dr. Haggag's statement of the facts.[6] (Opp. at 1.) The Court follows suit.

Plaintiff is "a chronic care patient" whose "blood needs monitoring every three months to track his heart and liver health and to ensure his prostate cancer remains in remission." (SUMF ¶ 3 (citing AC ¶ 34).) "Accordingly, Plaintiff requires blood work prior to most of his chronic care, medical tests, and other medical procedures." (*Id.* ¶ 4 (citing AC ¶ 29).)

Defendant is a medical doctor at NJSP. (*See* MSJ at 2–3, 6.) He has provided Plaintiff with treatment since about 2018. (*See* SUMF ¶ 5 (citing AC ¶ 28).) During the course of that treatment, "Plaintiff has requested that Dr. Haggag . . . draw blood from behind his left knee, citing concerns about his venous access," (*id.* ¶ 6 (citing AC ¶¶ 32–33)), but Defendant "has opted to draw blood from the radial veins in the Plaintiff's wrist," (*id.* ¶ 5 (citing AC ¶ 28)). "Plaintiff asserts that Dr. Haggag's refusal to comply with his specific preference for where his blood should be drawn causes him pain, leads him to decline the procedure altogether, and puts him at risk of serious and permanent damage to his radial veins and nerves in his wrist." (*Id.* ¶ 7 (citing AC ¶ 35).)[7]

---

[6] Plaintiff specifies that he "has no objection to any of the facts as written in the 'Statement of Facts' section of Defendant's Brief in Support of Defendant's Summary Judgment Motion and therefore relies on and incorporates such section." (Opp. at 1 (emphasis omitted).) The Court notes that the facts as written in Defendant's summary judgment brief are identical to those in Defendant's attached SUMF. (*Compare* MSJ at 2–3, *with* SUMF at 1–2.)

[7] In a section of his opposition brief titled "Counterstatement of Facts," Plaintiff adopts and incorporates Defendant's SUMF, then purports to "also offer[] [two] material facts," (Opp. at 1)—that Plaintiff's blood was drawn from behind his left knee "without any pain or complications" while he was incarcerated at a different state prison, (*id.* at 1–2) and that "[p]hlebotomists at New Jersey State Prison will take patient preferences regarding where to draw blood from into account," (*id.* at 2). Even if the Court were to disregard Plaintiff's noncompliance with Local Civil Rule 56.1(a) and consider these factual allegations, they are not "material" for the reasons explained below and thus do not defeat summary judgment.

3

On these facts, Plaintiff alleges that Defendant has been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. (AC ¶ 39.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Put another way, "[s]ummary judgment is designed . . . to assess whether a genuine issue of material fact exists and whether a trial is necessary." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995). A dispute is "genuine" if the evidence permits a reasonable jury to return a verdict in favor of the nonmovant, and a fact is "material" if it may affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the party seeking summary judgment carries its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. "[A] plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint," *Orsatti*, 71 F.3d at 484 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)), and a court's duty to view all facts and inferences in the light most favorable to the nonmoving party does not extend to "the mere allegations or denials of his pleadings" unsupported by factual evidence, *Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2023) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268 (3d Cir. 2014)). "Nor will '[b]are assertions, conclusory allegations, or suspicions' suffice." *Id.* (alteration in original) (quoting *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018)); *see also Jackson v. Danberg*, 594 F.3d 210, 228 (3d Cir. 2010) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue,

the demolition of which is a primary goal of summary judgment."). Likewise, the movant may establish entitlement to judgment as a matter of law by showing that the plaintiff's evidence is insufficient to establish an essential element of his claim. This showing "necessarily renders all other facts immaterial," such that "there can be no genuine issue as to any material fact" for a jury to decide. *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

## III. DISCUSSION

The Eighth Amendment's proscription on the "unnecessary and wanton infliction of pain" encompasses "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Eighth Amendment medical care claims have two elements: (1) the plaintiff's serious medical need and (2) the defendant's deliberate indifference to that need. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). This dispute centers on the deliberate indifference element.

Where, as here, a plaintiff claims that the medical care he was given was inadequate, rather than that such care was outright denied or delayed, the element of deliberate indifference has both a subjective and an objective prong. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 536 (3d Cir. 2017). First, the plaintiff must show that the defendant possessed "a 'sufficiently culpable state of mind,'" i.e., "knew of an excessive risk to [the plaintiff's] health or safety and affirmatively disregarded that risk." *Watts v. Herbik*, 364 F. App'x 723, 725 (3d Cir. 2010) (per curiam) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)); *see Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) ("Deliberate indifference is a subjective standard of liability consistent with recklessness as that term is defined in criminal law." (internal quotation marks omitted)); *Pearson*, 850 F.3d at 539 ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments

5

Clause . . . .'" (omission in original) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986))). Second, the plaintiff must show that the defendant's particular treatment "fell below a professional standard of care." *Pearson*, 850 F.3d at 536. This is so because courts begin with a presumption that medical treatment provided to an incarcerated person is proper, and that presumption can only be overcome with objective evidence to the contrary. *See id.* To satisfy the adequacy-of-care element of the deliberate indifference prong, extrinsic evidence, often medical expert testimony, is necessary unless it would be "obvious to a layperson" that the treatment at issue was inadequate. *Id.* "[E]valuating whether medical treatment is adequate presents an objective question typically beyond the competence of a non-medical professional." *Id.*

As an initial matter, it is undisputed that Dr. Haggag has provided ongoing medical treatment to Mr. Bradshaw. Since about 2018, Dr. Haggag has drawn Plaintiff's blood—specifically "from the radial veins in the Plaintiff's wrist," (SUMF ¶ 5 (citing AC ¶ 28))—as part of routine blood work that Plaintiff gets in advance of his various medical procedures and in order to "monitor[]" his various health conditions, (*id.* ¶¶ 3–4 (citing AC ¶¶ 29, 34)). Because that blood-draw site "causes [Plaintiff] pain . . . and puts him at risk of serious and permanent damage to his radial veins and nerves in his wrist," Plaintiff has asked Dr. Haggag to instead draw his blood from behind his left knee, but Dr. Haggag has not done so. (*Id.* ¶¶ 6–7 (citing AC ¶¶ 32–33, 35).)

Plaintiff relies almost entirely on these sparse complaint allegations to argue that Dr. Haggag is not entitled to summary judgment. They fall far short of stating a viable Eighth Amendment claim, let alone demonstrating a genuine dispute of material fact requiring submission to a jury. Importantly, neither negligence nor medical malpractice rise to the level of a constitutional violation, *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017), and "courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound

6

in state tort law," *id.* at 228; *see also id.* at 227 ("[P]rison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *Gaines v. Busnardo*, 735 F. App'x 799, 804 (3d Cir. 2018) (per curiam) ("Perhaps crutches or an ankle brace of some type would have better alleviated Gaines's pain. But that is not the relevant question under the Eighth Amendment."). Likewise, "mere disagreement" with a physician's exercise of professional judgment or the course of treatment given "does not create an actionable constitutional violation." *Romero v. Ahsan*, 827 F. App'x 222, 227 (3d Cir. 2020) (per curiam); *see James v. Pa. Dep't of Corr.*, 230 F. App'x 195, 197 (3d Cir. 2007) (per curiam) ("Although [Plaintiff] may have preferred a different course of treatment, his preference alone cannot establish deliberate indifference[,] as such second-guessing is not the province of the courts."). Without more, Plaintiff simply cannot overcome the presumptive propriety of Dr. Haggag's manner of treatment.

Beyond "rel[ying] on and incorporat[ing]" Defendant's SUMF, (Opp. at 1), the only evidence Plaintiff cites in his opposition brief is fourteen lines of deposition testimony from a non-party phlebotomist who works at NJSP, (*id.* at 2 (citing ECF No. 151-16 at 16:8–21)). Plaintiff relies on that testimony in support of his assertion that "[p]hlebotomists at New Jersey State Prison will take patient preferences regarding where to draw blood from into account." (*Id.*; *see* ECF No. 151-16 at 16:8–14 ("Q. Is [the back of the hand] typically where you draw blood? A. So something the patient might sa[y] . . . they have a preference they want it from. Sometime[s] we do let them say, 'Well, I want it from my hand, or I want it from my arm.'").) He also asserts, without any citation, that for nine years at a prior facility his "blood was drawn from the posterior of his left knee without any pain or complications." (Opp. at 1–2.) In passing, and again without any citation,

7

he adds that "[e]xtraction from the radial wrist veins cause[s] severe discomfort for Plaintiff." (*Id.* at 5.) Even if the Court were to consider these factual allegations despite their patent deficiencies, *see, e.g.*, L. Civ. R. 56.1(a); Fed. R. Civ. P. 56(c)(1)(A), they fail to defeat Dr. Haggag's properly supported summary judgment motion.

The record is devoid of objective evidence that the treatment Plaintiff received from Defendant fell below professional standards of care. That NJSP phlebotomists sometimes "let [patients] say" where they prefer their blood drawn from, (ECF No. 151-16 at 16:12–13), does not bear on these standards. Nor does the bare fact that a prior facility drew Plaintiff's blood from behind his left knee. Without more, this fact at best shows mere differences in treatment, not "a substantial departure from accepted professional judgment, practice, or standards" from which "a reasonable jury could conclude that [the defendant] actually did not base [his] decision on such judgment." *Gaines*, 735 F. App'x at 804 (internal quotation marks omitted); *cf. Romero*, 827 F. App'x at 227 ("[N]o actionable claim arises 'when a doctor disagrees with the professional judgment of another doctor,' because '[t]here may . . . be several acceptable ways to treat an illness.'" (second alteration and omission in original) (emphasis omitted) (quoting *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990))).

To survive summary judgment, Plaintiff must adduce expert testimony or other extrinsic evidence to show that Dr. Haggag's treatment deviated from professional standards of care. "[A]s laymen, the jury would not be in a position to determine that the particular treatment"—the blood-draw site utilized by Dr. Haggag—"fell below a professional standard of care." *Pearson*, 850 F.3d at 536; *see id.* ("[E]valuating whether medical treatment is adequate presents an objective question typically beyond the competence of a non-medical professional."). Plaintiff puts forth no extrinsic evidence on this issue. He counters only that "any reasonable juror could see" that drawing blood

8

from behind his knee "was objectively safer and more effective" than drawing blood from Plaintiff's wrists. (Opp. at 5; *see id.* at 1, 6.) Simply insisting that the inadequacy of treatment would be obvious to a layperson does not make it so. Plaintiff does not attempt to explain why it would be "obvious" to a layperson that Dr. Haggag's blood-draw site violated professional standards or why this case resembles those in which extrinsic evidence has been found unnecessary. *See, e.g.*, *Pearson*, 850 F.3d at 537 ("A layperson is capable of concluding that forcing a screaming patient to crawl to a wheelchair violates professional standards of care."); *Natale*, 318 F.3d at 582–83 ("A reasonable jury could conclude that [defendants] knew that [plaintiff] was an insulin-dependent diabetic and that if insulin was not administered as required, he would suffer adverse health consequences."). Here, the undisputed record supports the opposite conclusion. Plaintiff's failure to present any evidence sufficient to support his claim that Dr. Haggag acted with deliberate indifference by drawing blood from Plaintiff's radial wrist veins rather than from behind his knee is thus fatal to his claim.[8]

In sum, Dr. Haggag has shown the absence of evidence sufficient to support an essential element of Plaintiff's claim, and Plaintiff has failed to defeat Defendant's properly supported Motion for Summary Judgment. Because deliberate indifference requires more than mere negligence, and because Plaintiff has not presented extrinsic evidence that would permit a reasonable jury to conclude that Dr. Haggag's actions "so deviated from professional standards of care that it amounted to deliberate indifference," *Pearson*, 850 F.3d at 541, Plaintiff's Eighth Amendment claim against Dr. Haggag fails as a matter of law, and Dr. Haggag is entitled to summary judgment.

---

[8] The record also appears devoid of evidence that Dr. Haggag acted with a sufficiently culpable state of mind. The Court does not consider this issue further because Defendant focuses only on the adequacy of care prong of deliberate indifference.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 151) and **DISMISSES AS MOOT** Defendant's crossclaims against the remaining defendants[9] (*see* ECF No. 120). An appropriate Order accompanies this Memorandum Opinion.

_____
ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: December 29, 2025

---

[9] In his Answer to Plaintiff's Amended Complaint, Defendant brought crossclaims against the other defendants for contribution and indemnification in the event that Defendant was found liable to Plaintiff. (*See* ECF No. 120.) Although no party raises the issue, because summary judgment is herein granted in Defendant's favor, his crossclaims are necessarily moot.